IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAWN H.¹**, <br><br>        Plaintiff, <br><br>    v. <br><br> **NANCY A. BERRYHILL**, <br> Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, <br><br>        Defendant. | Case No. 3:17-cv-1927-SI <br><br> **OPINION AND ORDER** |

Bruce W. Brewer, PO Box 421, West Linn, OR 97068. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Michael Howard, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

¹ In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

1- OPINION AND ORDER

**Michael H. Simon, District Judge.**

Plaintiff Dawn H. ("Plaintiff"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision denying Plaintiff's application for DIB is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th

Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born in 1961. AR 245. Plaintiff completed one year of college and completed vocational training to drive a truck. AR 51, 249. Plaintiff worked as a trucker, cable technician, and clerical worker. AR 249. She filed for DIB on February 27, 2013, alleging disability beginning October 1, 2010, due to a "damaged left shoulder and neck;" a "hurt lower back;" cyclic vomiting with bowel blockage; and stress. AR 248.

Plaintiff's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). AR 19. An administrative hearing was held before ALJ Linda Thomasson on February 29, 2016. AR 35-83. Plaintiff was represented by counsel and testified. *Id.* On April 7, 2016, ALJ Thomasson issued a written decision denying Plaintiff's application. AR 19-29. The Appeals Council denied Plaintiff's subsequent request for review, making the ALJ's decision final. AR 1-3. Plaintiff requests review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

3- OPINION AND ORDER

potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is

not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ first determined that Plaintiff met the insured status under the Social Security Act through September 30, 2015. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from the alleged disability onset date of October 1, 2010 to September 30, 2015, her date last insured. AR 21. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: ulcerative esophagitis; obesity; spine disorder; and left shoulder disorder. AR 21. The ALJ also found that Plaintiff's migraines; "vertiginous syndromes;" anxiety; and substance addiction disorder were non-severe impairments. AR 21-23.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

5- OPINION AND ORDER

C.F.R. Part 404, Subpart P, Appendix 1. AR 22-23. The ALJ next addressed Plaintiff's RFC. The ALJ found that Plaintiff had the capacity to perform sedentary work, except that she can:

> push/pull with the left upper extremity occasionally at or above shoulder level; can frequently balance and climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds, stoop, kneel, crouch, and crawl; can occasionally reach overhead with the left upper extremity; and should have only occasional exposure to extreme cold, vibration, and hazards (such as moving mechanical parts and unprotected heights).

AR 24.

At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a document preparer. AR 29. The ALJ therefore concluded that Plaintiff is not disabled at step four and did not continue to step five. AR 31.

## DISCUSSION

Plaintiff argues the ALJ erred by: (A) rejecting Plaintiff's subjective symptom testimony; and (B) finding Plaintiff capable of performing her past relevant work at step four of the sequential process.

**A. Plaintiff's Subjective Symptom Testimony**

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

6- OPINION AND ORDER

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.' " *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Plaintiff completed adult function reports on April 15, 2013 and February 25, 2014, stating that she significantly injured her back, neck, and shoulder after a car accident and, separately, a fall from her truck. AR 270-71. Plaintiff also stated that after a major surgery in 2010, she began vomiting on a weekly basis and required hospitalization for several days every other month. AR 271. These conditions allegedly affected Plaintiff's ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. AR 276. Furthermore, Plaintiff reported that she could only walk two-to-five blocks before requiring rest, and her conditions caused irritability, frustration, weakness, and a lack of energy. AR 277, 283, 288.

At the administrative hearing, Plaintiff testified that she experienced frequent and sporadic episodes of vomiting, which were triggered by stress, heat, and using the bathroom. AR 62. Plaintiff required assistance with household chores for up to three days after such episodes. AR 63. Plaintiff stated that she used a cane to walk and used medicinal marijuana "once every couple days," at most. AR 65. Plaintiff rated her every day shoulder pain between five-to-ten on the pain scale. AR 68.

The ALJ discounted Plaintiff's subjective symptom testimony relating to her vomiting episodes. The ALJ noted that the alleged frequency and severity of Plaintiff's vomiting episodes was inconsistent with her obese body habitus. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (an ALJ may reject a claimant's subjective testimony due to inconsistencies between her testimony and the medical record). Plaintiff's BMI was 32.13 in February 2016 and she endorsed a 10-pound weight gain in August 2013, yet Plaintiff testified that she experienced nausea five-to-six times per week and frequently vomited. AR 63. Plaintiff argues that the ALJ lacked the information to find that her vomiting allegations conflicted with her obesity because the ALJ did not inquire about Plaintiff's caloric intake. The ALJ's interpretation of the record, however, is rational and must be upheld, as gaining weight is generally at odds with frequent vomiting. Accordingly, the ALJ did not err. *Burch*, 400 F.3d at 379.

The ALJ also discounted Plaintiff's alleged limitations relating to her nausea and vomiting because Plaintiff refused to stop smoking marijuana every day, against the advice of treating medical professionals. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Indeed, several physicians opined that Plaintiff's marijuana use could contribute significantly to her nausea and vomiting episodes: in May 2013, Plaintiff's ER doctor "strongly recommended [that] she discontinue marijuana use," and a gastroenterologist stated that "it would be wise" to

avoid marijuana; in June 2013, Plaintiff's physician believed that her cyclic vomiting was related to marijuana usage; in March 2014, a physician "stressed the importance of trying to avoid any marijuana use;" and in May 2014, Plaintiff refused to acknowledge that marijuana could be a "precipitating cause" of her cyclic vomiting. AR. 675, 680, 687, 851, 872, 890. While Plaintiff argues that the ALJ improperly assumed the mantle of medical expert by assuming that marijuana did not have a salutary effect on her conditions, substantial evidence in the record supports that Plaintiff's physicians believed that marijuana harmed her treatment progression. If Plaintiff's symptoms were so severe as to be disabling, it stands to reason that she would have at least attempted a trial period of marijuana abstinence to address her purportedly intolerable symptoms. Her refusal to do so allows the inference that her symptoms were not as severe as she has alleged. *See* Social Security Ruling ("SSR") 16-3p. Thus, the ALJ did not err in discrediting the severity of Plaintiff's testimony about her cyclic vomiting.[2]

The ALJ partially credited Plaintiff's testimony about her left shoulder pain, which she rated between five and ten on the pain scale. The ALJ concluded that the medical evidence did not support the level of pain endorsed by Plaintiff. The ALJ noted that an April 2008 MRI showed only "some degeneration" in the bicep tendon and superior labrum, and a June 2014 MRI showed bone formations that likely caused some element of impingement, tendinopathy of the supraspinatus tendon, and tears of the superior and inferior aspects of the labrum. AR 911. The ALJ also noted that Plaintiff displayed full motor strength of the upper extremities in May 2013, as well as intact sensation to touch, but that an August 2013 examination showed that

---

[2] The ALJ also noted that Plaintiff became agitated and combative when a doctor refused to prescribe narcotics for Plaintiff's cyclic vomiting, despite the doctor's assurance that narcotics were "not the best treatment" for vomiting. AR 740. The ALJ did not err in using Plaintiff's apparent "lack of motivation to improve" to discredit her testimony. AR 26.

9- OPINION AND ORDER

her shoulder strength was limited by pain. AR 684, 752. The ALJ's interpretation of the record is rational, given that Plaintiff displayed largely intact strength and mobility in her left shoulder, which is consistent with the assessed RFC.

The ALJ also discredited Plaintiff's testimony regarding her back pain, namely that she could not stand for more than 10 minutes. The ALJ noted that objective findings were mild, with MRIs showing only mild to moderate stenosis at the L3-4 and L4-5 vertebral levels. Plaintiff maintained a normal gait, and further maintained the ability to move all extremities with symmetric strength and did not exhibit tenderness. AR 1166. The ALJ found that Plaintiff's daily activities further belie her ability to stand for no more than 10 minutes at a time, because Plaintiff drove, shopped in stores weekly, performed chores at home because her boyfriend was disabled, and went out to a bar every two weeks. AR 25. Therefore, the ALJ's interpretation of the record was rational and supported by substantial evidence and, therefore, must be upheld.[3]

Most of Plaintiff's arguments are premised upon the principle that the ALJ's rejection of her testimony was impermissibly vague because the ALJ failed to identify specific evidence conflicting with specific testimony. The ALJ, however, analyzed each severe impairment in discrete sections, including sufficient explanations of how the medical record demonstrated conflicts with Plaintiff's testimony, summarized at the outset of the discussion of Plaintiff's RFC. As such, the ALJ's logical path may be reasonably discerned. *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal

---

[3] Furthermore, the record demonstrates that Plaintiff presented herself to the emergency room in June 2014, complaining of "incapacitating back pain," but could flex "easily on examination with encouragement." AR 914. Because Plaintiff was "apparently comfortable," the medical staff asked security to help discharge Plaintiff, as she was combative and did not require medical attention. *Id.*

clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." (quotation marks omitted)). The ALJ did not err.

## B. Plaintiff's Past Relevant Work

Work that a claimant performed within the last 15 years, which lasted long enough for him or her to learn how to perform, and was substantial gainful activity, is considered past relevant work. 20 C.F.R. § 404.1565(a). The ALJ is not required to obtain testimony from a vocational expert ("VE") at the fourth step of the sequential process. *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996). The burden of proof lies with the claimant at step four to demonstrate that she is unable to perform her past relevant work. *See, e.g.*, *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The ALJ, however, still has a duty to make the requisite factual findings to support a conclusion that the claimant is able to perform her past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); SSR 82-62, *available at* 1982 WL 31386, at *3 (Jan. 1, 1982); 20 C.F.R §§ 404.1571, 404.1574, 404.1565. This is accomplished by looking at the claimant's RFC and the physical and mental demands of the claimant's past relevant work. *Pinto*, 249 F.3d at 844-45; 20 C.F.R. § 404.1520(e).

The claimant must be able to perform the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Pinto*, 249 F.3d at 845; SSR 82-61, *available at* 1982 WL 31387 (Jan. 1, 1982). This determination requires "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Pinto*, 249 F.3d at 845; SSR 82-62. The regulations advise an ALJ to first consider past work as *actually* performed, and then as *usually* performed. *Pinto*, 249 F.3d at 845 (citing SSR 96-8p, *available at* 1996 WL 374184 (July 2, 1996)).

11- OPINION AND ORDER

Social security regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82-61, and the claimant's own testimony, SSR 82-41, *available at* 1982 WL 31389 (Jan. 1, 1982). *Pinto*, 249 F.3d at 845. The best source for how a job is generally performed is usually the Dictionary of Occupational Titles ("DOT"). *Id.* at 845-46; *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir. 1995); 20 C.F.R. § 404.1566(d); SSR 82-61.

Plaintiff testified that she worked at a government contractor's document control facility for three months, "making sure there weren't staples and paperclips" in student loan applications. AR 59. Plaintiff also scanned and sorted student loan applications, and occasionally moved boxes of documents. AR 280. The ALJ obtained the testimony of a VE. The VE classified Plaintiff's work as that of a document preparer and, based on Plaintiff's RFC and hypotheticals presented to the VE, the ALJ found that Plaintiff retained the ability to perform document preparation work. Plaintiff did not object to the VE's testimony at the hearing. The ALJ subsequently found Plaintiff not disabled at step four. AR 29. Plaintiff argues that her work at the document control facility does not match the DOT's definition of document preparer and, consequently, the ALJ erred.

According to the DOT, a document preparer:

> Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and

12- OPINION AND ORDER

> document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

DOT 249.587-018, 1991 WL 672349.

Although the DOT description does not precisely match Plaintiff's description of her work as a document preparer, the Court concludes that the ALJ did not err. Plaintiff scanned and sorted federal student loan documents, and examined applications for stray paperclips and staples, which fits within the DOT rubric of preparing documents for microfilming using a photocopy machine and "other work devices." Granted, Plaintiff did not prepare documents specifically for microfilming, but her work was analogous, as she prepared documents for digital storage.[4] Additionally, Plaintiff bears the burden of establishing the duties of her past relevant work and how those duties substantially differ from the description in the DOT. Plaintiff also bears the burden of establishing specific physical or mental limitations that would preclude her from performing the duties of her past relevant work, which she has not argued. *See Valentine*, 574 F.3d at 689. Instead, Plaintiff simply argues that the DOT description of a document preparer did not exactly match Plaintiff's testimony about her job duties, despite the substantial similarity between the two descriptions and unchallenged testimony from the VE stating that the descriptions were compatible. As such, the ALJ did not err in determining that Plaintiff retained the ability to perform her past work as a document preparer.

---

[4] Indeed, other VEs in this district have testified that a modern document preparer scans and digitally uploads documents to aid federal and state agencies in transferring to paperless systems, which matches Plaintiff's description of her past work. *See Wyatt C. v. Comm'r of Soc. Sec. Admin.*, 2018 WL 4600289 * 3-4 (D. Or. Sept. 22, 2018) (noting that the microfilming portion of the document preparer job is outdated).

13- OPINION AND ORDER

## CONCLUSION

The Commissioner's decision finding Plaintiff not disabled is supported by substantial evidence. Plaintiff's request for remand (ECF 1) is DENIED. The Commissioner's decision denying Plaintiff's application for DIB is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 22nd day of January, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge